## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRYAN JOHN MOYER,      :      CIVIL NO. 1:17-CV-1379

     : 

     Petitioner      :      (Chief Judge Conner)

     : 

v.      : 

     : 

TAMMY FERGUSON, PA STATE      : 

ATTORNEY GENERAL,      : 

     : 

     Respondents      : 

## MEMORANDUM

Petitioner Bryan Moyer ("Moyer") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a judgment and conviction imposed in the Court of Common Pleas of Potter County, Pennsylvania. (Doc. 1). For the reasons set forth below, the court will deny the habeas petition.

## I.     Background[1]

In 2005, Moyer was charged in three separate criminal informations with numerous counts of endangering the welfare of children, indecent assault, corruption of minors, rape, and involuntary deviate sexual intercourse. (Docs. 12-1, 12-2, 12-3, Commonwealth v. Moyer, Nos. CP-53-CR-57-2005, CP-53-CR-58-2005, CP-

---

[1] A federal habeas court may take judicial notice of state court records. Minney v. Winstead, 2013 WL 3279793, at *2 (W.D. Pa. June 27, 2013); see also Reynolds v. Ellingsworth, 843 F.2d 712, 714 n.1 (3d Cir. 1988). Accordingly, in reviewing this petition, the court takes judicial notice of the publicly available dockets of criminal and collateral post-conviction proceedings in the Court of Common Pleas of Potter County, the Superior Court of Pennsylvania, and the Supreme Court of Pennsylvania.

53-CR-138-2005 (Pa. Ct. Com. Pl. Potter Cty.)).  The charges relate to Moyer's

repeated molestation of five boys who attended the same daycare center as Moyer's

son.  (Doc. 12-22, <u>Commonwealth v. Moyer</u>, No. 309 WDA 2007, at 1-2 (Pa. Super.

Jan. 3, 2008)).  The abuse primarily occurred at Moyer's home while the victims

were visiting his son.  (<u>Id.</u>)  All of the boys were between three and six years old

when they were assaulted.  (<u>Id.</u>)

        A jury trial was held in the Court of Common Pleas of Potter County from

April 4, 2006 through April 7, 2006.  (Docs. 12-1, 12-2, 12-3).  At the conclusion of the

trial, the jury convicted Moyer of 10 counts of endangering the welfare of children,

19 counts of indecent assault, 9 counts of corruption of minors, 4 counts of rape, and

5 counts of involuntary deviate sexual intercourse.  (<u>Id.</u>)  Moyer filed post-sentence

motions raising several allegations of error.  (<u>Id.</u>)  The trial court granted partial

relief and found that the rape convictions should have merged with the involuntary

deviate sexual intercourse convictions for sentencing purposes.  (Doc. 12-22,

<u>Commonwealth v. Moyer</u>, No. 309 WDA 2007, at 3).  On September 8, 2006, following

a sentencing reduction, Moyer was sentenced to a period of incarceration of 19

years, 3 months to 46 years.  (<u>Id.</u>)

        Moyer pursued direct appeal proceedings.  <u>See</u> electronic docket sheet for

<u>Commonwealth v. Moyer</u>, Superior Court of Pennsylvania, 309 WDA 2007, found at

http://ujsportal.pacourts.us.  On January 3, 2008, the Pennsylvania Superior Court

affirmed the judgment of sentence.  (<u>Id.</u>; <u>see</u> <u>also</u> Doc. 12-22, <u>Commonwealth v.

Moyer</u>, No. 309 WDA 2007).  Moyer filed a petition for allowance of appeal to the

Pennsylvania Supreme Court.  <u>Commonwealth v. Moyer</u>, 198 WAL 2008 (Pa.).  On

November 17, 2008, the Pennsylvania Supreme Court denied the petition for allowance of appeal.  Id.  Moyer did not file a petition for writ of certiorari to the United States Supreme Court, therefore his judgment of sentence became final ninety days later on February 16, 2009.  See 42 PA. CONS. STAT. § 9545.

On October 21, 2009, Moyer filed a timely petition for post-conviction collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46.  (See Docs. 12-1, 12-2, 12-3).  On October 28, 2009, counsel was appointed, however counsel failed to act on behalf of Moyer.  (See Doc. 12-32, Commonwealth v. Moyer, Nos. 57, 58, and 138 of 2005, at 2-3, PCRA Court Opinion). On September 12, 2014, a judge became aware of the pending matter when Moyer filed a *pro se* amended PCRA petition.  (Id.)  New counsel was subsequently appointed to represent Moyer.  (Id.)  On February 5, 2015, Moyer filed a second, counseled, amended PCRA petition.  (Id.)  On July 10, 2015, a hearing was held on Moyer's second amended PCRA petition.  (Doc. 12-13, PCRA Hearing Transcript). On November 13, 2015, the PCRA court denied the petition.  (Doc. 12-32, Commonwealth v. Moyer, Nos. 57, 58, and 138 of 2005, PCRA Court Opinion, Nov. 13, 2005).

On November 30, 2015, Moyer filed a timely notice of appeal to the Pennsylvania Superior Court.  Commonwealth v. Moyer, 1947 WDA 2015, 1948 WDA 2015, 1949 WDA 2015 (Pa. Super.).  On December 9, 2016, the Pennsylvania Superior Court affirmed the denial of the second amended PCRA petition. Commonwealth v. Moyer, 2016 WL 7190063 (Pa. Super. Dec. 9, 2016).  Moyer filed a petition for allowance of appeal to the Pennsylvania Supreme Court.

<u>Commonwealth v. Moyer</u>, 60 WAL 2017, 61 WAL 2017, 62 WAL 2017 (Pa.). On July 17, 2017, the Pennsylvania Supreme Court denied the petition for allowance of appeal. <u>Commonwealth v. Moyer</u>, 642 Pa. 71, 169 A.3d 1049 (Table) (Pa. 2017).

## II. <u>Standards of Review</u>

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A habeas corpus petition pursuant to § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 498-99, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); <u>Estelle</u>, 502 U.S. at 68.

### A. **Exhaustion**

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. <u>See</u> 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. <u>See</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 192 (3d Cir. 2000).

4

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts." Castille v. Peoples, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). To "fairly present" a claim, a petitioner must present its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999); see also Nara v. Frank, 488 F.3d 187, 197-98 (3d Cir. 2007) (recognizing that a claim is fairly presented when a petitioner presents the same factual and legal basis for the claim to the state courts). While the petitioner need not cite "book and verse" of the federal Constitution, Picard v. Connor, 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), he must "give the State 'the opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" before presenting those claims here, Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (quoting Picard, 404 U.S. at 275, 92 S.Ct. 509).

**B.      Merits Standard**

Once a court has determined that the exhaustion requirement is met and, therefore, that review on the merits of the issues presented in a habeas petition is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d). Section 2254(d) provides, in pertinent part, that an application for a writ of habeas corpus

premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Id.

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. Miller-El v. Cockrell, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); Matteo, 171 F.3d at 888; Thomas v. Varner, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must

clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); Porter v. Horn, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000); cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." Breighner v. Chesney, 301 F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[2]). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. Porter, 276 F. Supp. 2d at 296; see also Williams v. Taylor, 529 U.S. 362, 408-09 (2000); Hurtado v. Tucker, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. Porter, 276 F. Supp. 2d at 296; see also Williams, 529 U.S. at 408-09.

---

[2] "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination." 28 U.S.C. § 2254(f).

### III.  Discussion

In the instant petition, Moyer alleges ineffective assistance of counsel on the following grounds: (1) failure to raise a Rule 600 violation; (2) failure to argue a meritorious Rule 704 issue; (3) failure to obtain a plea agreement; (4) failure to call character witnesses; (5) failure to obtain a complete Rule 600 transcript on appeal; (6) failure to challenge the illegality of his sentence on the basis of Alleyne v. United States, 570 U.S. 99 (2013); and, (7) failure to raise prosecutorial and police misconduct.  (Docs. 1, 5).  In addition to the ineffective assistance of counsel claims, Moyer also alleges that the Commonwealth committed prosecutorial misconduct, that his sentence is illegal under Alleyne, and that he is actually innocent of the crimes of which he was convicted.  (Id.)

### A.  Ineffective Assistance of Counsel Claims

The Sixth Amendment right to counsel is the right to the effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  This right to effective assistance of counsel also extends to the first appeal.  Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004).  In Strickland, the Supreme Court articulated a two-prong test in assessing whether a petitioner has been denied the effective assistance of counsel.  Strickland, 466 U.S. at 687-88.  A petitioner must demonstrate: (1) that his counsel's representation "fell below an objective standard of reasonableness" and (2) that such defective performance caused the petitioner prejudice.  See id.

In evaluating the first prong of the Strickland test, the court must be "highly deferential" toward counsel's conduct.  Id. at 689.  There is a strong presumption

8

that counsel's conduct fell within the wide range of reasonable professional assistance.  Id. ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.").  "Strickland and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." Rolan v. Vaughn, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing Strickland, 446 U.S. at 689).  Notably, courts will not deem counsel ineffective for failing to raise a meritless argument.  Strickland, 466 U.S. at 691; United States v. Saunders, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  See Strickland, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.  Moreover, the petitioner must show that he or she had a reasonable likelihood of prevailing on the motion at issue, and having prevailed on the motion, it was also reasonably likely that the result of the trial would have been different. See Thomas v. Varner, 428 F.3d 491, 502 (3d Cir. 2005).

To prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy both prongs of the Strickland test.  Carpenter v. Vaughn, 296 F.3d 138, 149 (3d Cir. 2002).  The inquiry may begin with either the deficient performance or

prejudice prong, and the court is not required to consider the second prong of the test if the petitioner is unable to satisfy the first one. Strickland, 466 U.S. at 697.

### 1. *Failure to Raise a Rule 600 Violation*

The court first considers Moyer's potential claim under the state speedy trial rule, PA. R. CRIM. P. 600. (Doc. 5 at 15-20). In case 57 of 2005, criminal proceedings commenced when Moyer was charged on February 2, 2005. See Commonwealth v. Moyer, CP-53-CR-57-2005. In case 58 of 2005, criminal proceedings commenced when Moyer was charged on December 15, 2004. See Commonwealth v. Moyer, CP-53-CR-58-2005. Moyer's jury trial began on April 4, 2006. Id.

The PCRA court considered Moyer's ineffectiveness claim with respect to his Rule 600 speedy trial claim and found that this claim lacked arguable merit. (Doc. 12-32, Commonwealth v. Moyer, Nos. 57, 58, and 138 of 2005, PCRA Court Opinion, Nov. 13, 2015). The PCRA court's findings concerning this issue, as adopted by the Superior Court, are as follows:[3]

> The Petitioner argues that his various counsel were ineffective for failing to properly raising the Petitioner's Rule 600 claim. The Petitioner argues that any continuance request made by Mr. Rague or Mr. Lepley prior to the March 24, 2005 preliminary hearing were ineffective as he had not yet retained them.

---

[3] On appeal from the PCRA court, the Pennsylvania Superior Court adopted the PCRA court's reasoning and affirmed the order of the PCRA court. (Doc. 12-32, at 6-9, Commonwealth v. Moyer, Nos. 57, 58, and 138 of 2005, PCRA Court Opinion, Nov. 13, 2015; Commonwealth v. Moyer, 2016 WL 7190063 (Pa. Super. Dec. 9, 2016)). The PCRA court's opinion will be the primary reference point in addressing the majority of Moyer's ineffective assistance of counsel claims in the instant habeas petition. See Simmons v. Beard, 590 F.3d 223, 231-32 (3d Cir. 2009); Bond v. Beard, 539 F.3d 256, 289-90 (3d Cir. 2008).

PA. R. CRIM. P. 600 requires that criminal trials commence within 365 days after a written complaint is filed, excluding any period during which the defendant requests a continuance or the defendant or the defendant's attorney is unavailable for trial.

The Petitioner testified that District Attorney Leber failed to appear at his initial preliminary hearing for case 58 of 2005 and that, although he was without counsel, he was willing to proceed. He claims the District Attorney requested a continuance at that time. The Petitioner testified that he never requested a continuance and that neither of his attorneys requested a continuance other than on[e] continuance request by Mr. Lepley[] of January 3, 2006 based upon his illness. He discussed the strategy of raising the Rule 600 issue with his attorneys.

Mr. Rague testified that he did represent the Petitioner at the times continuances were requested in these cases. He also testified that he did request the granted continuances. Furthermore, Mr. Rague stated he would have raised Rule 600 before the trial if there had been a valid issue. Mr. Lepley testified that he did request a continuance based upon his illness. Mr. Lepley recalls discussing Rule 600 with the Petitioner and recalls thinking there was no valid Rule 600 issue. Mr. Travis testified that he raised the Rule 600 issue as part of a post sentence motion. That motion was denied and Mr. Travis elected to not raise the issue on direct appeal as he felt the Petitioner would not have gained anything by including that argument as it was a weak one.

The Court finds the testimony of Mr. Rague, Mr. Lepley, and Mr. Travis to be credible and finds the Petitioner's testimony to the contrary to not be credible. Based upon the credible testimony and Magisterial District Court records the Court finds that Mr. Rague was representing the Petitioner at the time he requested continuances in this matter. Commonwealth Exhibit 8 and 9. Similarly, the Court finds Mr. Lepley was representing the Petitioner at the time he requested a continuance in this matter.

At case 57 of 2005 the Petitioner was charged on February 2, 2005. The Petitioner, through Mr. Rague, requested to continue his preliminary hearing scheduled for February 9, 2005 and then did the same for the preliminary hearing scheduled for February 17, 2005. Commonwealth Exhibit 8. The preliminary hearing was continued and eventually held on March 24, 2005. The Petitioner filed a motion for continuance on January 3, 2006 because the Petitioner's attorney, Mr. Lepley, was ill. This motion expressly waived the Petitioner's right to a speedy trial under Rule 600. The motion was granted, and the proceeding was

continued to January 30, 2006. The trial commenced 63 days later, on
April 3, 2006.

For Rule 600 purposes, 356 days passed between the filing of the
complaint and the beginning of the trial, as follows: 7 days beginning
on February 2, 2005, plus 286 days beginning on March 24, 2005, plus
63 days beginning on January 30, 2006. Therefore, there is no Rule 600
violation with respect to case 57 of 2005. Similarly, there is no Rule 600
violation in case 58 of 2005. At case 58 of 2005 the Petitioner was
charged on December 15, 2004. The Petitioner, through Mr. Rague,
requested to continue his preliminary hearing scheduled for December
21, 2004, and did the same for the preliminary hearings scheduled for
January 26, 2005 and February 17, 2005. Commonwealth Exhibit 9.
The Preliminary hearing was continued and eventually held on March
24, 2005; Thereafter, cases 57 and 58 of 2005 proceeded on the same
schedule. Therefore, only 355 days passed between the filing of the
complaint and the beginning of the trial, as follows: 6 days beginning
on December 15, 2004, plus 286 days beginning on March 24, 2005, plus
63 days beginning on January 30, 2006.

It is clear from the record and the testimony of former counsel that the
Petitioner is not entitled to relief under Rule 600 and, accordingly, this
issue is without arguable merit. Therefore, counsel was not ineffective
with regard to this issue. See Milligan, Supra.

(Doc. 12-32, at 6-9, Commonwealth v. Moyer, Nos. 57, 58, and 138 of 2005, PCRA

Court Opinion, Nov. 13, 2015).

As the Third Circuit has previously recognized:

Our review of a federal habeas corpus petition is limited to remedying
deprivations of a petitioner's federal constitutional rights. We can take
no cognizance of non-constitutional harm to the defendant flowing
from a state's violation of its own procedural rule, even if that rule is
intended as a guide to implement a federal constitutional guarantee.

Wells v. Petsock, 941 F.2d 253, 256 (3d Cir. 1991); see also Estelle v. McGuire, 502

U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine

state-court determinations on state-law questions."). Accordingly, to the extent

Moyer asserts that the delay violated his rights under the state speedy trial rule, this claim is simply not cognizable in a federal habeas proceeding.

However, Moyer's claim that he was denied a speedy trial in violation of the Sixth Amendment is cognizable on federal habeas review. In <u>Barker v. Wingo</u>, 407 U.S. 514 (1972), the United States Supreme Court held that to determine whether a person's constitutional right to a speedy trial had been violated, a court must consider four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice that resulted from the delay. <u>Barker</u>, 407 U.S. at 530. <u>See</u> <u>also</u> <u>Heiser v. Ryan</u>, 15 F.3d 299 (3d Cir. 1994); <u>Burkett v. Cunningham</u>, 826 F.2d 1208 (3d Cir. 1987).

The first factor, the length of the delay, is a threshold factor or "triggering mechanism" for the vesting of a constitutional speedy trial right. <u>Barker</u>, 407 U.S. at 530. If the delay is not "presumptively prejudicial," then there is no need to even consider the other factors that go into the balance because there is no speedy trial claim. <u>Id.</u> "If the delay is sufficiently long, courts assess the extent to which the delay was long enough to 'intensify' the prejudice caused by the delay." <u>United States v. Battis</u>, 589 F.3d 673, 678 (3d Cir. 2009) (citation omitted). "Longer delays can be tolerated, for example, when the crime is very serious or complex." <u>Wells</u>, 941 F.2d at 257. In the present case, Moyer was charged on February 2, 2005 in case 57 of 2005, and on December 15, 2004 in case 58 of 2005. Moyer's jury trial began on April 4, 2006. Given that Moyer's delay was slightly more than one year, the court must weigh the remaining <u>Barker</u> factors. <u>See, e.g.,</u> <u>Hakeem v. Beyer</u>, 990 F.2d 750,

760 (3d Cir. 1993) (finding that a fourteen-and-one-half month delay is sufficient to warrant inquiry into the other <u>Barker</u> factors).

The second factor, the reason for delay, is to be given different weight based upon the nature of the reason. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." <u>Barker</u>, 407 U.S. at 531. "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." <u>Id.</u> "Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." <u>Id.</u> The government bears the burden to justify the delay. <u>Hakeem</u>, 990 F.2d at 770. In the case at bar, the record reflects that Moyer sought several continuances, and expressly waived his right to a speedy trial. These are appropriate justifications for the delay, and thus weigh against Moyer's speedy trial claim.

The third <u>Barker</u> factor, whether the defendant asserted his right to a speedy trial, also weighs against Moyer. "[A] defendant's claim that the right is being violated provides strong evidence that it actually was violated." <u>Battis</u>, 589 F.3d at 681. Moyer's first assertion of this claim occurred in a post-sentence motion. The motion was denied, and Moyer did not raise the issue on direct appeal. The record reflects that Moyer did not pursue this claim any further.

The fourth <u>Barker</u> factor is prejudice to the defendant. This final factor is assessed "'in light of the interests . . . which the speedy trial right was designed to protect.'" <u>Battis</u>, 589 F.3d at 682 (quoting <u>Barker</u>, 407 U.S. at 532). The <u>Barker</u>

court identified three types of prejudice resulting from a prolonged trial date: oppressive pretrial incarceration, anxiety and concern about the impending trial, and possible impairment of the defense. <u>Barker</u>, 407 U.S. at 532. Moyer does not claim that the "conditions of his confinement" made his pretrial incarceration prejudicial, <u>Hakeem</u>, 990 F.2d at 761, he has made no allegations that would establish any prejudice, and he offers no theory as to how the delay impaired his defense. Specifically, he has not pointed to any witnesses or evidence that became unavailable during the minor delay. Thus, Moyer failed to establish actual prejudice and this factor does not weigh in his favor. <u>See</u> <u>Vanlier v. Carroll</u>, 384 F. App'x 155 (3d Cir. 2010) (upholding denial of speedy trial claim regarding more than two-year delay for lack of prejudice).

Considering all of the <u>Barker</u> factors together, the court concludes that they weigh against Moyer. Hence, Moyer's counsel reasonably concluded that a constitutional speedy trial motion would not likely be successful. Moyer is therefore unable carry his burden under <u>Strickland</u> of showing that his counsels' representation "fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. This claim will be denied.

### 2. *Failure to Effectively Argue a Rule 704 Issue*

Moyer next argues that counsel was ineffective for failing to challenge Rule 704 violations. (Doc. 5 at 20-22). The PCRA court's rejection of this issue, as adopted by the Superior Court, is as follows:

> The Petitioner argues [t]hat his counsel failed-to effectively argue meritorious Rule 704 issue and that he was prejudiced by that failure.

"To be eligible for relief under [the PCRA], the petitioner must plead and prove by a preponderance of the evidence . . . [t]hat the allegation of error has not been previously litigated[.]" 42 Pa.C.S. § 9543. "For purposes of this [the PCRA], an issue has been previously litigated if: . . . the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue[.]" 42 Pa.C.S. § 9544.

Here, the Rule 704 issue has been previously litigated as the Pennsylvania Superior Court ruled on the merits of this issue, and affirmed this Court denial of the Petitioner's post trial Rule 704 motion, in its Opinion of January 3, 2008. The Petitioner sought, but was ultimately not granted, allowance of appeal to the Pennsylvania Supreme Court. Thus, the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue and the Petitioner is not eligible for relief on this issue.

The Petitioner attempts to keep this issue alive by couching it as an ineffective assistance of counsel issue. "[O]ne cannot avoid the restrictions on raising a previously litigated issue by claiming that counsel was ineffective in his or her method of advocating the issue." Com. v. McCall, 786 A.2d 191, 194 (Pa. 2001) (citations omitted). See also Com. v. Collins, 888 A.2d 564, 572 (Pa. 2005). Thus, this issue being previously litigated, it appears the Petitioner is not eligible for relief even though he qualified this as being an ineffective assistance of counsel claim. Insofar as that issue may stand separately from the previously litigated issue above, the Court finds the Petitioner is not entitled to relief.

Under Pa.R.Crim.P. Rule 704(a)(1) "sentence in a court case shall ordinarily be imposed within 90 days of conviction[.]" "When the date for sentencing in a court case must be delayed, for good cause shown, beyond the time limits set forth in this rule, the judge shall include in the record the specific time period for the extension." Rule 704(a)(2). "[A] defendant who is sentenced in violation of [Rule 704] is entitled to a discharge only where the defendant can demonstrate that the delay in sentencing prejudiced him or her." Com. v. Anders, 725 A.2d 170, 173 (Pa. 1999) (emphasis added).

Here, the Petitioner was convicted on April 7, 2006 and was sentenced on September 8, 2006. Judge Leete explained that the Petitioner was not sentenced within ninety days because of a delay caused by the necessity of a report from the Pennsylvania Sexual Offenders Assessment Board prior to sentencing. Such a delay is "good cause"

for sentencing the Petitioner beyond the ninety-day limit. Additionally, the Petitioner has never shown at any proceeding that the delay in sentencing prejudiced him and, accordingly, he is not entitled to relief. <u>See</u> <u>Anders</u>, <u>Supra.</u> As the issue is without arguable merit counsel was not ineffective with regard to this issue. <u>See</u> <u>Milligan</u>, <u>Supra.</u>

(Doc. 12-32, at 10-12, <u>Commonwealth v. Moyer</u>, Nos. 57, 58, and 138 of 2005, PCRA Court Opinion, Nov. 13, 2015).

Pennsylvania Rule of Criminal Procedure 704 requires that a sentence shall "ordinarily be imposed" within ninety days of a conviction or the entry of a plea of guilty or *nolo contendere*, unless the court orders the sentencing extended for a specific time period for good cause shown. <u>See</u> PA. R.CRIM. P. 704(A)(1), (2). Failure to impose a sentence within the time provided by the Rule entitles a defendant to a discharge only if the defendant can show prejudice. <u>Commonwealth v. Anders</u>, 555 Pa. 467, 725 A.2d 170, 171-72 (Pa. 1999). Prejudice cannot be presumed, but must be determined by evaluating (1) the length of the delay beyond the time provided in the Rule, (2) the reason for the improper delay, (3) the defendant's timely or untimely assertion of his rights, and (4) any resulting prejudice to the interests protected by his speedy trial and due process rights. <u>Id.</u>

As the PCRA court noted, Moyer was convicted on April 7, 2006 and was sentenced on September 8, 2006. The record reflects that Moyer was not sentenced within ninety days due to obtaining a necessary report from the Pennsylvania Sexual Offenders Assessment Board prior to sentencing. The state court found that such delay was "good cause" for sentencing Moyer beyond the ninety-day limit. In light of the relatively short delay, and a lack of prejudice, any motion to discharge

Moyer based on the delay likely would have been denied. Accordingly, trial counsel cannot be deemed ineffective for failing to pursue a meritless claim. The court will deny habeas relief on this issue.

### 3. *Failure to Obtain a Plea Agreement*

Moyer argues that counsel was ineffective for failing to obtain a written plea agreement. (Doc. 5 at 23-25). The PCRA court found that this issue lacked arguable merit and that counsel was not ineffective with regard to this issue. The Superior Court fully adopted the following findings of the PCRA court:

> The Petitioner argues that his counsel was ineffective for not reducing a plea offer he accepted to writing. He testified that District Attorney Jeff Leber made a plea offer to him on or about February 18, 2005 at an office in Coudersport in the presence of his wife and his attorney James Rague. When questioned on cross-examination the Petitioner testified that his wife was not present to testify at the July 10, 2015 hearing because she has a difficult time remembering details.
>
> The Petitioner testified that the plea proposal was that he would plead guilty to one count each of rape and endangering the welfare of a child, the remaining charges would be *nolle prossed,* and the sentence would be 5 to 10 years. Additionally, the Commonwealth would grant the Defendant immunity and not prosecute other possible cases against the Defendant. He testified that he accepted the plea at that meeting and that District Attorney Leber wrote down the details on a piece of paper and indicated he would produce a formal writing for the Judge. Thereafter, the Petitioner testified that he never saw a written version of that plea offer, but that he told his brother, Ronald Moyer; his sister, Kathi Cain; his mother, Phyllis Moyer; and a friend, Susan Culver, that he had accepted a plea offer. The Petitioner testified he never rejected the plea, but was surprised when he later received a written offer with a recommended sentence of 7 ½ to 15 years with no immunity on other charges. He felt that District Attorney Leber had reneged on the 5 to 10 year offer and asked Mr. Rague to keep pushing to obtain the aforementioned plea. When asked on cross-examination why he did not seek to enforce the 5 to 10 year agreement through the Court, the Petitioner simply stated he was not sure why that was not requested.

The Petitioner does remember rejecting other offers made by District Attorney Leber, including an offer with a recommended sentence of 15 to 30 years. He also recalls his primary trial counsel, James Rague, writing him letters requesting that he accept a plea offer. The Commonwealth offered a letter from Mr. Rague to the Defendant dated April 1, 2005 which mentions the Commonwealth was offering the Defendant a 7 ½ to 15 year sentence. Commonwealth Exhibit 2. The Commonwealth also offered a letter from Mr. Rague dated May 6, 2005 which again recounted that a 7 ½ to 15 year offer had been made to the Petitioner and that the Petitioner was refusing the same. Commonwealth Exhibit 3.

The aforementioned February meeting occurred prior to the preliminary hearing, which occurred on March 24, 2005. The Petitioner acknowledged that he did not bring up the plea at his preliminary hearing and stated he did not raise the issue because he had an attorney and did not know he could raise the issue. The Petitioner testified he did not meet with District Attorney Leber to discuss a plea after February of 2005.

Mr. Rague testified that he met with the Petitioner several times, both while he was in and out of jail. Mr. Rague testified that the Petitioner and his wife were both very involved in the trial strategy. The Petitioner's theory of defense was that the child-accusers were manipulated by officials. He testified there were many plea negotiations with both former District Attorney Leber and the District Attorney at the time of trial, Dawn Fink. The best plea offer Mr. Rague recalls receiving for the Defendant was [a] 7 ½ to 15 year prison sentence. He stated that Mr. Leber never offer[ed] 5 to 10 years with immunity. Additionally, he testified that the Petitioner was never interested in any plea agreement whatsoever and that the Petitioner never asked him to reduce a plea to writing. Mr. Rague does recall encouraging the Petitioner to accept a plea offered by Mr. Leber because he felt that the next District Attorney, Dawn Fink would offer a less favorable plea once she assumed the position. However, Mr. Rague testified that the Petitioner was not interested in pleading guilty and that he wanted to fight the charges.

Similarly, Attorney George Lepley, the Petitioner's other trial counsel, testified that the Petitioner was adamant that he was not going to plead guilty. Mr. Lepley recalls discussing a plea offer with a minimum term on 7 ½ years with Mr. Rague and the Petitioner. Ronald Travis, the Petitioner's counsel from post sentence through direct appeal, testified that he was never advised that there was a plea offer which had not been honored. The District Attorney at the time of

trial, Dawn Fink, testified that she did not recall any plea agreements and that the Petitioner was not interested in pleading guilty.

The Petitioner's sister, Kathi Cain, testified that in late-January or February of 2005 the Petitioner indicated to her that a 5 to 10 year plea offer had been tendered to him. She also testified that the Petitioner indicated he was going to accept the plea offer, but that it needed to be reduced to writing. The Petitioner's friend, Susan Culver, testified that she had discussed the alleged plea agreement with the Petitioner. She recalls that in early or late spring of 2005 they discussed a possible plea bargain under which the Petitioner would get out of jail in 5, 7, or 10 years. She testified that she advised him if that was the offer he should seriously consider accepting it. She testified that Moyer never said for sure if he had accepted a plea offer because it was revoked by the District Attorney. The Petitioner's brother, Ronald Moyer, testified that the Petitioner told him on multiple occasions that he had accepted a plea offer of 7 to 15 years with a requirement of sex offender counseling.

The Court finds, based on all of the testimony offered regarding this issue, that the Petitioner was not offered a 5 to 10 year with immunity, and that he also did not request such a plea be reduced to writing. Mr. Rague, Mr. Lepley, and Ms. Fink all indicated that the Petitioner was not interested in pleading guilty as he was adamant he wanted to fight the charges. Additionally, the Petitioner did not raise the issue of failure to reduce a plea to writing at his preliminary hearing, nor did he mention the issue to his post sentence counsel, Mr. Travis. Though some of the Petitioner's friends and relatives recall the Defendant advising them that a plea offer being tendered, their recollections are not thoroughly consistent with each other's recollections, the Petitioner's recollection, or with the Attorneys['] recollections. Only Kathi Cain testified in complete accord with the Petitioner's version of the facts. Based on the above testimony and the relative credibility of the witnesses, the Court reasons the Petitioner was not offered a plea offer of 5 to 10 year with immunity, and that he also did not request such a plea be reduced to writing. Additionally, no Plea was presented to the Court and accepted. Accordingly, this issue is not of arguable merit and counsel was not ineffective with regard to this issue. See Milligan, Supra.

(Doc. 12-32, at 3-6, Commonwealth v. Moyer, Nos. 57, 58, and 138 of 2005,

PCRA Court Opinion, Nov. 13, 2015).

The PCRA court held a hearing on this claim and determined that the

Commonwealth never made an offer of 5 to 10 years with immunity. Such factual

determinations made by state courts are binding on federal habeas appeal,

rebuttable only by clear and convincing evidence. See Werts, 288 F.3d at 196 (citing

28 U.S.C. § 2254(e)(1)). Moyer has failed to present clear and convincing evidence to

the contrary. Instead, Moyer reasserts the same arguments set forth in the state

court proceedings. The court is bound by the state court's factual determinations.

Counsel cannot be found ineffective for failing reduce an alleged offer to writing,

and Moyer could not have been prejudiced by counsels' failure to communicate an

offer that never existed. Moyer is not entitled to habeas relief on this claim.

### 4. *Failure to Call Expert Witnesses*

With respect to the next issue, Moyer alleges that counsel failed to call

character and expert witnesses to testify on his behalf. (Doc. 5 at 25-26). The PCRA

court's finding concerning this issue, as adopted by the Superior Court, is as

follows:

> The Petitioner claims that he had various appropriate character
> witnesses available to testify, but that his trial counsel failed to call
> such witnesses. He claims such witnesses included Ronald Moyer,
> Phyllis Moyer, Susan Culver, and Kathi Cain. Additionally, the
> Defendant believes he retained an expert witness to discuss how false
> memory syndrome could be affecting his accuser's memories. The
> Petitioner testified that his trial counsel refused to call this expert.
>
> The Court initially notes that the Defendant was able to call several
> character witnesses not named above. Additionally, Judge Leete ruled
> on an objection and disallowed Dana Reynolds, Tony Reynolds, and
> Jeffrey Myers from testifying as character witnesses as they had not
> been in the area of the Petitioner for approximately seven years. See
> Com. v. Fisher, 764 A.2d 82, 87 (Pa. Super. 2000) ("Character means
> one's general reputation in the community.") (citations omitted). The

Petitioner testified that in 2006 Ronald Moyer and Phyllis Moyer lived in Berks County, Susan Culver had moved to Las Vegas, Nevada, and Kathi Cain lived in Royersburg, Pennsylvania, near Philadelphia. Thus, the Court finds the four above-referenced individuals would not have had knowledge of the Petitioner's reputation within the community and their testimony on the Petitioner's character would have been inadmissible if they had been called. See Fisher, Supra.

Thus, the Petitioner's trial counsel had a reasonable basis for not calling them and thus counsel, was not ineffective with regard to this issue. See Milligan, Supra. Additionally, Mr. Lepley and Mr. Rague testified that they called every witness that the Petitioner had insisted upon and that the Petitioner was very actively involved in his case. The Court finds the former counsels' testimony to be credible and the Petitioner's testimony to the contrary to not be credible. Accordingly, the Court finds the Petitioner's trial counsel was not ineffective as the Petitioner's claim is without arguable merit. See Milligan, Supra.

Regarding calling a defense expert witness Mr. Lepley testified that he determined that the testimony of the defense expert would not have been helpful to the defense. Furthermore, again Mr. Lepley and Mr. Rague testified that they called every witness that the Petitioner had insisted upon and that the Petitioner was closely involved in all trial strategy. The Court finds that trial counsel had a reasonable basis for not calling the defense expert as they reasoned he would not be helpful to the defense. Additionally, the Court finds the Petitioner's claim is without arguable merit as both of his trial attorneys indicated the called every witness insisted upon by the Petitioner. The Court finds former counsels' testimony to be credible and the Petitioner's testimony to the contrary to not be credible. For those reasons counsel was not ineffective with regard to this issue. See Milligan, Supra.

(Doc. 12-32, at 16-18, Commonwealth v. Moyer, Nos. 57, 58, and 138 of 2005, PCRA Court Opinion, Nov. 13, 2015).

In this case, the state court's analysis is wholly justified under Strickland. Trial counsels' decisions to refrain from calling character and expert witnesses reflected sound strategic judgments in the factual context of this case. The United States Court of Appeals for the Third Circuit has held that the precise choice made here, to forego calling certain witnesses, is an appropriate tactical decision that does

not entitle a petitioner to habeas corpus relief on the grounds of ineffective assistance of counsel. Alexander v. Shannon, 163 F. App'x 167, 175 (3d Cir. 2006). See also Sanders v. Trickey, 875 F.2d 205, 212 (8th Cir. 1989) (trial counsel's failure to call a witness "is precisely the sort of strategic trial decision that Strickland protects from second-guessing"). The state court's determination that counsels' performance was not deficient is not an unreasonable application of Strickland. Thus, Moyer is not entitled to federal habeas relief on this claim.

5. ***Failure to obtain a complete Rule 600 transcript on appeal***

Moyer alleges that counsel was ineffective for failing to timely obtain a full transcript of the January 30, 2006 pretrial hearing. (Doc. 5 at 26-28). The Pennsylvania Superior Court determined that this claim was waived, and found as follows:

> Appellant next argues, albeit briefly, that the PCRA court abused its discretion "by sequestering defense witnesses and not Commonwealth [] witnesses, by permitting the [Commonwealth] to use and enter a partial Rule 600 transcript without disclosure or availability of the complete Rule 600 transcript, and by accepting testimony contrary to authenticated demonstrable evidence." (Appellant's brief at 29.) Upon review, we find that appellant's argument on this issue is comprised primarily of boilerplate allegations and fails to include any citation to the certified record where this error allegedly occurred. Accordingly, we deem this claim waived. See Commonwealth v. Einhorn, 911 A.2d 960, 970 (Pa. Super. 2006), appeal denied, 920 A.2d 831 (Pa. 2007) (concluding that arguments which are undeveloped and lack citation to factual background or the certified record are waived); see also Pa.R.A.P. 2119(c), (d).

Commonwealth v. Moyer, 2016 WL 7190063, at *4.

Moyer has waived this claim under state law and, as a result, has procedurally defaulted this claim in this forum. See <u>Suarez v. Pennsylvania</u>, 2014 WL 2922283 (M.D. Pa. 2014) (concluding that where the state court on direct appeal found the claims waived because no objection had been made at trial, federal habeas review is precluded unless the petitioner can demonstrate cause and prejudice, or that a failure to consider the claims will result in a fundamental miscarriage of justice) (citing <u>Sloan v. Attorney General of Pennsylvania</u>, 2010 U.S. Dist. LEXIS 101854, *33-34 (W.D. Pa. 2010)); <u>Solano v. Lamas</u>, 2014 WL 2567166 (M.D. Pa. 2014). Moyer is not entitled to federal habeas review unless he can meet his burden of establishing "cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims would result in a fundamental miscarriage of justice." <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>Harris v. Reed</u>, 489 U.S. 255, 260-63 (1989); <u>Morris v. Horn</u>, 187 F.3d 333, 342 (3d Cir. 1999).

Moyer does not even acknowledge his procedural default, let alone allege cause and prejudice to excuse it. (<u>See</u> Docs. 1, 5, 13). For this reason alone, the default must stand. <u>See</u> <u>Teague v. Lane</u>, 489 U.S. 288, 298 (1989) (holding that the petitioner's failure to allege cause for his default precluded federal habeas review of a defaulted claim). Further, there is no indication that a failure to review this claim will result in a fundamental miscarriage of justice. <u>See</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995). Consequently, Moyer is precluded from pursuing federal habeas corpus relief with respect to this issue. Any attempt by Moyer to exhaust his state remedies at this time would be futile, because these claims are procedurally

defaulted due to waiver of the claims and expiration of the PCRA statute of limitations. See 42 PA. CONS. STAT. § 9545(b)(1) (explaining that collateral actions must be filed "within one year of the date the judgment becomes final[.]"). As such, Moyer is in procedural default for failing to comply with the state filing requirements.

### 6. *Failure to Remedy an Illegal Sentence*

Moyer next argues the statute under which he is serving his mandatory minimum sentence is unconstitutional and illegal under Alleyne, and counsel were ineffective for failing to challenge the illegality of his sentence on this basis. (Doc. 5 at 28, 34-36). In affirming the PCRA court's denial of this claim, the Pennsylvania Superior Court found as follows:

> Lastly, appellant argues that the PCRA court erred in failing to conclude that his mandatory minimum sentence, imposed pursuant to 42 Pa.C.S.A. § 9718, was illegal under Alleyne v. United States, —— U.S. ——, 133 S.Ct. 2151 (2013), and this court's subsequent decision in Commonwealth v. Wolfe, 106 A.3d 800 (Pa. Super. 2014), affirmed, 140 A.3d 651 (Pa. 2016). (Appellant's brief at 30-33.)
>
> In Alleyne, the United States Supreme Court held that the Sixth Amendment requires that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." Alleyne, 133 S.Ct. at 2155 (citation omitted). Thereafter, in Wolfe, a panel of this court held that the version of Section 9718 that was in effect from January 1, 2007 until August 17, 2014, was unconstitutional in its entirety, in light of Alleyne and subsequent decisions by this court. Wolfe, 106 A.3d at 806, citing, *inter alia*, Commonwealth v. Newman, 99 A.3d 86 (Pa. Super. 2014), appeal denied, 121 A.3d 496 (Pa. 2015) (*en banc*) (as "stand[ing] for the proposition that mandatory minimum sentencing statutes in Pennsylvania of this format are void in their entirety"). Appellant maintains that because Section 9718 was invalidated by Alleyne, he is entitled to be resentenced without the application of any mandatory minimum sentencing provisions. (Appellant's brief at 32-33.) We disagree.

> Instantly, we recognize that appellant was sentenced in 2006, and
> Alleyne was decided on June 17, 2013. Contrary to appellant's
> contention, this court has expressly rejected the notion that Alleyne
> applies retroactively to cases on collateral review. See Commonwealth
> v. Washington, 142 A.3d 810, 814-815 (Pa. 2016) (holding that the
> Alleyne decision does not apply retroactively to collateral attacks upon
> mandatory minimum sentences advanced in PCRA proceedings); see
> also Commonwealth v. Riggle, 119 A.3d 1058, 1064 (Pa. Super. 2015)
> (stating that, "while this Court has held that Alleyne applies
> retroactively on direct appeal, we have declined to construe that
> decision as applying retroactively to cases during PCRA review").
> Accordingly, we agree with the PCRA court that Alleyne and its
> progeny do not apply retroactively to the instant matter, which was
> already at the PCRA review stage at the time Alleyne was decided.

Commonwealth v. Moyer, 2016 WL 7190063, at * 5-6. The Superior Court further

found that to the extent that Moyer argued that his trial counsel were ineffective for

failing to challenge the illegality of his sentence on the basis of Alleyne, he was not

entitled to relief. Id. at *6 n.6. The Superior Court found that because this

underlying sentencing claim was meritless, counsel cannot be held ineffective for

failing to pursue a meritless claim. Id.

Moyer's judgment of sentence became final on February 16, 2009, after the

expiration of the ninety-day period for filing a petition for writ of certiorari to the

United States Supreme Court. See 42 PA. CONS. STAT. § 9545. It is clear that his

judgment of sentence became final four years before the Alleyne decision was

issued in 2013. It is well-settled as a matter of federal law that Alleyne is not

retroactively applicable to cases on collateral review. See United States v. Reyes,

755 F.3d 210, 212-13 (3d Cir. 2014) cert. denied, 135 S.Ct. 695 (2014); United States v.

Winkelman, 746 F.3d 134, 136 (3d Cir. 2014). Additionally, the Pennsylvania

Supreme Court has held that Alleyne does not apply retroactively to cases on

collateral review.  See Commonwealth v. Washington, 142 A.3d 810, 820 (Pa. 2016).

Moyer's claim that his sentence was illegal under Alleyne provides no basis for

habeas relief.  Furthermore, counsel cannot be held ineffective for failing to pursue

a meritless claim.

### B.    Prosecutorial and Police Misconduct

Moyer argues that the Commonwealth committed prosecutorial misconduct

by purchasing food for the jurors, and that police officers purchased snacks for the

jurors and the Commonwealth's witnesses.  (Doc. 5 at 29-33).  Moyer further alleges

that counsel was ineffective for failing to raise these issues at trial.  (Id.)  In

affirming the PCRA court's rejection of this claim as waived, the Pennsylvania

Superior Court found as follows:

> Appellant next argues that the PCRA court erred in failing to conclude
> that the Commonwealth committed prosecutorial misconduct "by
> purchasing food and drinks for witnesses and lunch for the jury, by
> conceal[ing], alter[ing] or shorten[ing] video interviews, by violating
> Rule 600, by violating Rule 704, and by concealing evidence favorable
> and exculpatory to [appellant]."  (Appellant's brief at 25-28.)
>
> This court has long recognized that, "to be entitled to PCRA relief, a
> petitioner must plead and prove, *inter alia*, that the allegation of error
> has not been previously litigated or waived.  An issue is waived if it
> could have been raised prior to the filing of the PCRA petition, but was
> not."  Commonwealth v. Turetsky, 925 A.2d 876, 879 (Pa. Super. 2007),
> appeal denied, 940 A.2d 365 (Pa. 2007) (citation omitted); see also 42
> Pa.C.S.A. § 9544(b) (stating, "an issue is waived if the petitioner could
> have raised it but failed to do so before trial, at trial, during unitary
> review, on appeal or in a prior state post conviction proceeding.").
>
> Instantly, the record reflects that appellant could have pursued claims
> of alleged prosecutorial misconduct on direct appeal, but failed to do
> so.  Accordingly, we find these claims waived.

Commonwealth v. Moyer, 2016 WL 7190063, at *4.

Because Moyer did not raise his prosecutorial misconduct claims, and related ineffective assistance of counsel claim, in either his direct appeal or his PCRA appeals, Moyer has failed to exhaust his state remedies for claim. See <u>Moore v. Morton</u>, 255 F.3d 95, 103 n. 7 (3d Cir. 2001) (declining to review some of petitioner's prosecutorial misconduct claims where factual predicates for the claims (i.e., the prosecutor's particular actions/statements) were not raised in each New Jersey state court); <u>see</u> <u>also</u> <u>McCandless</u>, 172 F.3d at 261 (3d Cir. 1999) ("To 'fairly present' a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted."). Moyer has waived these claims under state law and, as a result, has procedurally defaulted these claims in this forum. See <u>Suarez</u>, 2014 WL 2922283; <u>Solano</u>, 2014 WL 2567166. Accordingly, he is not entitled to federal habeas review unless he can meet his burden of establishing "cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims would result in a fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750; <u>Harris</u>, 489 U.S. at 260-63; Morris, 187 F.3d at 342. Moyer has failed to meet this burden. Consequently, Moyer is precluded from pursuing federal habeas corpus relief with respect to this issue. Furthermore, as stated *supra*, any attempt by Moyer to exhaust his state remedies at this time would be futile, because this claim is procedurally defaulted due to waiver of the claim and expiration of the PCRA statute of limitations. As such, federal review of this claim is unavailable.

## C.  Actual Innocence Claim

To qualify for relief under a theory of actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." <u>Schlup</u>, 513 U.S. at 324. The limited nature of this exception is underscored by the court's explicit observation that "claims of actual innocence are rarely successful." <u>Id.</u>

In his petition, Moyer states that he is actually innocent of the underlying crimes. (Doc. 5 at 37-39). He alleges that the victim testified falsely during hearings and at trial and was incompetent to testify, and that all counsel failed call character witnesses on his behalf to establish his actual innocence. (<u>Id.</u>) Fatal to the instant petition, actual innocence claims focus on "new" evidence – "relevant [exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical] evidence that was either excluded or unavailable at trial." <u>Schlup</u>, 513 U.S. at 327-28. Moyer has not produced any new evidence that would persuade this court that no reasonable juror would have voted to find him guilty beyond a reasonable doubt. To the contrary, Moyer's arguments focus on the interpretation and rehashing of arguments and testimony adduced during the state court proceedings. Because Moyer's case is not one of those "rare" cases, which presents new reliable evidence that was not presented at trial, he is not entitled to relief under a theory of actual innocence.

**IV.** **Certificate of Appealability**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the disposition of this case debatable. Accordingly, a COA will not issue.

**V.** **Conclusion**

For the reasons set forth above, the court will deny the petition for writ of

habeas corpus.  A separate order shall issue.

                                              /S/ CHRISTOPHER C. CONNER
                                         Christopher C. Conner, Chief Judge
                                         United States District Court
                                         Middle District of Pennsylvania


Dated:        May 6, 2019